And we'll go on to the next case, which is 1632-86, United States v. Simpson. Good morning, Ms. Jacobs. Good morning, Your Honors. May it please the Court, Michelle Jacobs for the defendant, David Simpson. You know, before you even begin, I want to ask you something. Does Mr. Simpson understand that if he persists in bringing his ineffective assistance claim on direct appeal that he may lose it later? Yes. To bring it on a habeas claim? He does understand that. Have you explained to him that he has a better opportunity to obtain an evidentiary hearing in a collateral proceeding than he did in his Rule 33 motion? Yes. Mr. Simpson fully understands the issues that the Court is asking about. And so you're telling me, you're telling us, I take it, that you do not have to consult with Mr. Simpson one more time before we take the case under advisement? Do I feel like I need to consult with him again? No, I don't. You were very clear with him. Yes. Okay. I mean, I understand my obligation as defense counsel, and I understand the issues on appeal. I have had sufficient time to consult with him, and I have explained to him his options. But ultimately, it is Mr. Simpson's decision that we go forward with the appeal. And I would submit that it's not a bad decision here. And the reason that I say that is that what we're asking for is a remand for an evidentiary hearing, because the District Court erred in concluding that exculpatory, and this was exculpatory, potentially exculpatory evidence, the District Court assumed, and I would say assumed, was inadmissible. There was no real analysis of whether this information could have been, evidentiary analysis of whether this information could have been admissible had it been investigated by defense counsel. And the reason I say that is primarily, there's sort of two buckets of evidence that I think are the most important to talk about, the take-the-wrap evidence and the previous trips evidence, I'll call it. So with the take-the-wrap evidence, recall that the proffered information is that the informant, Mr. Burdell, made statements both on the scene of the arrest, the traffic stop and arrest, and later during the search of Mr. Simpson and Mr. Simpson's mother's home, that Simpson was taking the wrap for the other two in the car. Now what does that mean? Generally, I would submit that taking the wrap means taking responsibility for something that somebody else has done, right? In other words, the informant is sort of confessing to the crime. I did it, he's taking the wrap for me and the other person in the car. Now, if this had been investigated, if the district court had heard enough about this, would it have been admissible at trial? Well, he's standing at the scene when this happens. So as we explain in our brief, one potential evidentiary basis for this is present sense impression. It has literally just happened and he's talking to the mother of the defendant. Your son is taking the wrap for me. Your son is taking the wrap for the other person in the car. Describing a contemporaneous event, no, you know, the government argues this calculated narration piece, but I would submit there's lots of things that the informant might have said, like your son just got arrested, right? There's no reason to sort of make up this confession on his own part. The speaker perceived the event, certainly, contemporaneous or shortly thereafter. It's a present sense impression. And if it's not that, excited utterance, I think, which is a broader evidentiary basis for admission, would also cover the taking the wrap statement. And again, remembering that this is exculpatory evidence, which was entirely consistent with the defendant's theory of defense, and is consistent with the defendant's own testimony, that being, it was his. This was not mine. I am a heroin user. This was not my connection, right? I didn't buy the drugs. I didn't possess the drugs. How do we get past his comment to the U.S. marshal who is transporting him that he is a low-level dealer? How do we get past that testimony? First of all, Mr. Simpson didn't confess to that was my heroin. And certainly, Mr. Simpson has a heroin problem. He's a heroin user. There's testimony that he is in this car, has been to St. Louis before, and I'll get to that in a minute. But there's nothing about that comment or anything else that is inconsistent with his defense that, listen, the only people that were in the car were those three, right? And the only evidence that this was Mr. Simpson buying the drugs and possessing the drugs was Burdell and Winchester. And those were the people that Mr. Simpson was supposedly taking the rap for. The other piece of this, the other sort of bucket of evidence, was this previous trip's evidence. The district court says it was just irrelevant. It didn't matter. But it wasn't irrelevant given that the government actually presented evidence on direct examination of, none other than Burdell and Winchester, that they had made previous trips with Mr. Simpson to St. Louis. Now, if the government thought it relevant, you know, Mr. Burdell testified this was our regular pickup spot. If that's relevant, it's hard for me to imagine that it would not have been relevant for Mr. Simpson to be able to, in some way, try to address or rebut that evidence. And the way to do that was with these two witnesses, both of whom would have said, it's Mr. Burdell that makes the trips to St. Louis to buy the drugs. Yeah, again, is Mr. Simpson sometimes in the car? He is. He's a heroin user. But the only evidence of him being the possessor with intent to distribute was your informant, who says Simpson's taking the rap, and Winchester. So those previous trips, if it was relevant to present the jury with this information, which the government did on direct examination through two witnesses, it's hard to imagine how the district court is correct in saying it would have been irrelevant for the defendant to try to defend himself, to try to rebut that evidence. And so, in the end, what I'm asking, and what we're asking, is that the district court conduct an evidentiary hearing to actually make these determinations. I think there's enough probably in this record for the court to be able to say this was likely admissible. But in the end, all we're asking is that the district court be given an opportunity to understand, what would these witnesses have testified to, what are the parameters? You know, the government, rightly so, says these evidentiary bases are heavily factual, right? The time, the contemporaneous nature of the statements, the excited utterance, those things are intensely factual. Yes, they are. And so, for the court, the district court, in one sentence, to just say, no hearsay exceptions were available, without any factual analysis, is ultimately the error that we're asking this court to correct. If the court had looked at the factual circumstances, I submit that it's very, very likely this exculpatory information would have been admissible at trial. And because it's the kind of information that goes directly to the elements of the offense, who's the possessor, did he have knowledge, what was his intent, it is prejudicial, I would submit. I noticed in the briefs that these witnesses submitted letters and said they were notarized. Could you be more specific with these sworn, these affidavits? They're not constructed in an affidavit, sort of typical affidavit. Were they sworn? They say they're notarized. And that's as much as I can, you know, when they were submitted, they were obviously submitted through defense counsel at the time, in support of the motion for new trial, as a way to get this evidence, again, in front of the court. So whether they were affidavits or notarized statements, I think it was the intent of the defendant and defense counsel to inform the court of the general parameters, at least, of the information that these witnesses had. Thank you. And if the court has no further questions, I'll reserve the remainder of time for rebuttal. Thank you. Okay. Mr. Baum. Good morning, Your Honors. May it please the court. Jason Baum, on behalf of the United States. Judge Myerscough, who sat over the defendant's trial, concluded that even if the case had been tried exactly as Mr. Simpson had wanted, there was no reasonable probability that the outcome of the trial would have been any different. Well, let me talk about something here. I understand that Burdell's testament to Donna was hearsay. But why could it not come in to impeach Burdell? Burdell testified that Simpson bought the drugs, but he told Donna that Simpson was taking the rap for him. That seems like a fairly significant impeachment of the government's main witness. The statement still had great value, it seems to me, as impeachment material, even though it might not come in for the truth of the matter. I think that is an arguable basis for it, Your Honor. But what Judge Myerscough said is that Burdell was sufficiently, his credibility was sufficiently in front of the jury that even if he had been impeached any further, there wasn't a reasonable probability that the jury would have reached a different conclusion. I think, in other words, the theory that Burdell had set Mr. Simpson up, that he was really the drug dealer, was fully before the jury. They had that theory from Mr. Simpson's own testimony before them, and they, with their verdict, rejected that theory. And the other thing I wondered about was, I understand that Burdell and Winchester were allowed to testify that Simpson accompanied them on prior trips to St. Louis to buy heroin. But, boy, you know, if I was sitting there, that sure sounds like pure propensity evidence to me. How was it not plain error to admit that testimony? I think there was no objection to it. No, a plain error, that's why. That's right. I think there was testimony about how did they know where they were going, they've been there before. I think there was, it wasn't plain error just given that they didn't testify directly about this instance, where they drove, a man came out. There was differing accounts as to whether Simpson went in and got the heroin, but a man came out and gave the heroin. But they testified specifically about this, and I just don't think that it would meet plain error that somehow that testimony undermined the direct evidence about this trip. Overall, we just don't think that there is any reason for an evidentiary hearing in this case because Judge Myerscough took the allegations in the letters, and they are not sworn letters, Your Honor, but she took that information as if true and said that even if it was the case, this wouldn't undermine the jury's verdict. Wait a minute, were they notarized? They were notarized, but they were not sworn. There's no under penalty of perjury declaration in the letters. They're attached, I think, in the appendix. They're also pre-date, oddly, the events here, so there is an error on the date of the letters, but we think that's just a typographical error on the date of the letters. But they are not sworn. Judge Myerscough did take them as though they were true and just said this is insufficient to undermine the jury's verdict in this case, which under Rule 33, we believe, is within her discretion to do so, having sat over the trial. And Mrs. Simpson has passed away. She has passed away, Your Honor. If there are no further questions, we would ask you to affirm. Thank you very much. Thank you. Very briefly, I disagree with counsel's reading of the district court's decision that somehow she took into consideration the truth of all of this and nonetheless rejected it. What she said was the evidence was inadmissible and therefore would not have changed the outcome of the trial. In other words, you can't establish prejudice. It's a very different thing. Similarly, counsel indicated that the jury rejected the setup theory, the take the rap theory, because they heard it from the defendant. It's quite another thing to hear it from the person who is confessing to that theory. Had the jury heard not just Mr. Simpson say it's not my drugs, he's clearly got an interest in the trial, in the outcome of the trial, but to hear it from the informant, twice, that Mr. Simpson was taking the rap for the informant is a very different piece of evidence in front of the jury and I would submit a much more compelling one that may well have changed the outcome of the trial. And you were appointed. I was. Thank you so much for your representation of your client. Thank you. And thanks to the government always as well.